STATE OF OREGON, *Respondent, v.*
RONALD K. CAMPBELL, *Appellant.*

STATE OF OREGON, *Respondent, v.*
SYLVAN CAMPF, *Appellant.*

STATE OF OREGON, *Respondent, v.*
ED COLLINS, *Appellant.*
498 P2d 836

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellants. With him on the briefs were Bruce Spaulding, Francis E. Harrington, Maurice D. Sussman and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

FOLEY, J.

All three defendants waived jury and were found guilty by the court of paying money for obtaining the signatures of electors on a referendum petition in violation of ORS 254.590:

"No person shall give, pay or receive any money

or other valuable consideration for securing signatures of electors upon any petition for the initiation of any measure or referendum on any measure or for the recall of any public officer."

Defendants Campf and Collins sponsored a petition to refer Oregon Laws 1971, ch 535, pp 952-54 (the cigarette tax law amendments) to the people in the November 1972 election. They hired defendant Campbell to obtain enough signatures to place the measure on the ballot.

Defendant Campbell was indicted separately for paying money to one Stephen Jordan "* * * for Stephen Jordan's securing signatures of electors on a petition * * *." There is no issue as to Campbell's guilt.

Defendants Campf and Collins were accused in a joint indictment of paying money to Campbell to secure signatures on the petition. Defendants Campf and Collins contend that the evidence is insufficient to sustain their convictions on the theory that Campbell had a free hand in fulfilling his contract. The contract provided:

"* * * * *

"Canvasser is to secure not less than 25,000 valid signatures * * *.

"* * * * *

"Canvasser is to receive for his services the sum of Six Thousand Dollars ($6,000.00) from which he shall pay all wages, taxes and other expenses, and if he shall by obtaining sufficient valid signatures be the primary cause of getting the referendum on the ballot shall receive the additional sum of Twenty-Five Hundred Dollars ($2500.00).

"* * * * *."

Campbell received $7,500 shortly after the contract was signed and proceeded to recruit and pay canvassers. The finding of the trial court is supported by the language of the contract, the initial payment, and the subsequent conduct of the parties which indicates that the sponsors intended their payment to Campbell as compensation for his work in obtaining the required number of signatures.

The appeals have been consolidated pursuant to Rule 1.40 of the Rules of Procedure for the purpose of considering constitutional arguments raised by all three defendants.

■ They first contend that ORS 254.590 is void because it is vague and overbroad. The statute is neither. It clearly forbids paying a person to secure signatures on a petition—precisely what was alleged and proven in the present cases. There is no need to resort to rules of statutory construction when the plain and usual meaning of the words was adequate to warn the defendants of the proscribed activity.

■ Defendants also challenge the statute as an unconstitutional infringement of the rights of the people to refer legislation under the Oregon Constitution, Art IV, § 1. They assert that the referendum power is self-executing, that is, the constitutional amendment sets forth a sufficient rule by which the right may be enjoyed and protected without being inhibited or abridged by legislative acts. Even though the section is self-executing and no enabling act was required to carry it into effect, *Stevens v. Benson*, 50 Or 269, 273, 91 P 577 (1907), the constitution contemplates implementing legislation.

"* * * Nevertheless, the enactment of legislation to aid or facilitate its operation is not only

permissible but seems to be contemplated by the wording of the section: [Citations omitted]. Any legislation which tends to ensure a fair, intelligent and impartial accomplishment may be said to aid or facilitate the purpose intended by the constitution. Any safeguard against deception and fraud in the exercise of the initiative and referendum powers tends to assure to the electorate the benefits conferred by § 1 of Article IV.

"Such legislation, however, must be reasonable, not 'curtailing the right or placing any undue burdens upon its exercise': Stevens v. Benson, supra. Nor may it 'hamper or render ineffective the power reserved by the people': [Citations omitted]." *State ex rel. v. Snell,* 168 Or 153, 160-61, 121 P2d 930 (1942).

The first referendum act was introduced by amendment to the state constitution and was adopted in 1902. The use of paid canvassers was the subject of controversy as early as 1912.

"The fraudulent practices of hired circulators have recently caused more discussion in Oregon than any other matter concerning direct legislation, and have been the cause of most of the present agitation for changes in the initiative and referendum laws. How extensive such fraudulent practices have generally become it is impossible to say. There has been nothing like a thorough investigation of the petitions except in a few cases, but the fraud disclosed by such investigations creates a suspicion that very much more fraud remains undisclosed. Although in some cases circulators may have been imposed upon by forgers of signatures, apparently in most cases the circulators themselves have alone been guilty of fraud." Barnett, James D., The Operation of the Initiative, Referendum, and Recall in Oregon, at 65 (1915).

*See State ex rel v. Olcott,* 62 Or 277, 125 P 303 (1912).

■ Although ORS 254.590 was not passed until 1935, we cannot say in the light of the aforementioned history that there was no reasonable basis for the legislature's action. Nor does the statute violate defendants' rights of speech, press, assembly, and freedom to petition for redress of grievances. A person is free to circulate petitions and recruit volunteers. The proscription centers on paying for securing signatures. As defendants argue, the statute does prevent a wealthy person from hiring others and does thereby deny such a person greater power than is enjoyed by a poor person seeking to place a measure on the ballot. *Reynolds v. Sims*, 377 US 533, 561-67, 84 S Ct 1362, 12 L Ed 2d 506 (1964), and the decisions which follow it, however, stand firmly for the proposition that persons are not entitled to greater political power solely by virtue of their wealth.

■ Defendants' remaining assignment of error is that the prosecutor denied them equal protection of the laws by prosecuting them after dismissing charges against other persons. A transcript of testimony from an earlier proceeding to enjoin defendants from hiring canvassers was introduced as an exhibit. A state police officer testified in that proceeding that he had arrested 14 canvassers and had given verbal warnings to 12 juveniles. Apparently defendants were denied the opportunity of introducing evidence as to this allegation in a preliminary motion; but even if such evidence were before us, the decision to prosecute the three men who organized and paid for the campaign lay within the realm of prosecutorial discretion. As appears from the Statement of Contributions and Expenditures filed with the Secretary of State pursuant to ORS 254.600, which is an exhibit in this case, the prosecutor was aware that defendants employed over

250 persons as canvassers, almost half of whom received less than $15 each. There does not appear to have been any official discrimination along constitutionally prohibited lines of the type that was condemned in *Yick Wo v. Hopkins,* 118 US 356, 6 S Ct 1064, 30 L Ed 220 (1886), cited by defendants, which involved a clear, intentional discrimination against Chinese. *See also, State v. Hicks,* 213 Or 619, 637, 325 P2d 794 (1958), *cert denied* 359 US 917, 79 S Ct 594, 3 L Ed 2d 579 (1959).

Affirmed.