571 P.2d 557 (1977)
STATE of Oregon, Respondent,
v.
Naomi Lee HODGDON, Aka Naomi Lee Thornton, Aka Naomi Lee Harker, Appellant.
Court of Appeals of Oregon.
Argued and Submitted June 30, 1977.
Decided November 21, 1977.
*558 Larry N. Sokol, the ACLU of Oregon, Portland, argued the cause for appellant. With him on the briefs was Harlan Bernstein, the ACLU of Oregon, Portland.
Melinda L. Bruce, Asst. Atty. Gen., Salem, argued the cause for respondent. With her on the brief were James A. Redden, Atty. Gen., and W. Michael Gillette, Sol. Gen., Salem.
Before SCHWAB, C.J., and LEE and RICHARDSON, JJ.
RICHARDSON, Judge.
Defendant alleges that she was prosecuted under a state statute rather than under a similar municipal ordinance with less severe penalties solely because of her sex. The trial court denied her motion to dismiss the case as a denial of equal protection, and she appeals her conviction.
Defendant was arrested during a disturbance at a tavern in Newberg. She was lodged in the Yamhill County Women's Detention Facility (WDF) and charged with Disorderly Conduct, ORS 166.025, and Resisting Arrest, ORS 162.315. She was tried in Yamhill County District Court.
Defendant contends that it was because of her sex that she was lodged in the WDF rather than in Newberg City Jail, and because of her placement there, she was charged and prosecuted in district court under the state statutes rather than in Newberg Municipal Court under the city ordinances. As a result she faced criminal penalties twice those she would have faced for the same offense in Newberg.
The only testimony taken at the hearing on the motion to dismiss was that of the arresting officer. The officer explained that it was the unwritten policy of his office to take women to the county jail because there were no facilities for women at the city jail. The officer testified that in the event a woman was to be released on her own recognizance rather than held on bail, she might be taken to the city jail. In this case, his sergeant had told him that defendant would be cited into district court in order to answer the resisting arrest charge. The officer could not say that the primary reason she was lodged in county jail was her sex, but he assumed it was one reason. The city jail cells are not segregated and each cell and its sanitary facilities are visible from other cells. Women taken into custody are therefore housed at the county jail. Once lodged in county jail, the officer testified that it was more convenient to charge a violation of state statute and cite the person into district court, since it obviated the necessity of transporting the individual back to the Newberg Municipal Court. He further testified that he had had little experience in citing men into district court, and that the only times he had done so were when the men had physical problems or illnesses which demanded 24-hour supervision and required that they be lodged in the county jail. The Newberg city jail does not have a full-time jailer.
Defendant alleges that the process by which she was taken to the county jail, charged with the violation of state statutes on disorderly conduct and resisting arrest and tried in district court, violated her constitutional right to equal protection. The nub of her argument is that the treatment accorded her was the result of an enforcement procedure which discriminated against her because she was a female. Essential to her argument is her claim that her "male counterpart," a man "semi-involved" *559 and arrested in the same incident, was lodged in city jail and tried under a municipal ordinance with less stringent penalties than the state statute under which she was tried and convicted. Her quarrel is not with the state statute, which is neutral on its face, but with its alleged discriminatory enforcement.
A workable definition of discriminatory enforcement has its genesis in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886):
"* * * Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. * * *" 118 U.S. at 373-74, 6 S.Ct. at 1073.
The issue of unequal or selective enforcement of criminal laws has been raised and treated in several Oregon cases. See, State v. Howell, 240 Or. 558, 402 P.2d 89 (1965), cert denied 383 U.S. 922, 86 S.Ct. 898, 15 L.Ed.2d 676 (1966) (Selective enforcement of Habitual Criminal Act not an equal protection violation); Bailleaux v. Gladden, 230 Or. 606, 370 P.2d 722 (1961), cert denied 371 U.S. 848, 83 S.Ct. 86, 9 L.Ed.2d 84 (1962) (No defense that Habitual Criminal Statute is applied only to whites); State v. Hicks, 213 Or. 619, 325 P.2d 794 (1958), cert denied 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 579 (1959) (Mere laxity in enforcement of Habitual Criminal Statute by district attorney not an unconstitutional violation of equal protection); State v. Campbell/Campf/Collins, 10 Or. App. 255, 498 P.2d 836 (1972), aff'd 265 Or. 82, 506 P.2d 163, appeal dismissed 414 U.S. 803, 94 S.Ct. 132, 38 L.Ed.2d 39 (1973) (No improper exercise of discretion where only organizers of referendum campaign were prosecuted); State v. Goddard, 5 Or. App. 454, 485 P.2d 650 (1971) (No denial of equal protection where men and not women charged with Habitual Criminal Statute).
A careful reading of these decisions shows that discriminatory enforcement of criminal statutes may be subject to attack where it can be shown that the enforcement is the result of intentional or purposeful invidious discrimination.
State v. Hicks, supra, was one of the earlier Oregon cases to discuss the issue of selective discriminatory enforcement of criminal laws. In rejecting a claim of discrimination in enforcement of the Habitual Criminal Act, the court quoted People v. Montgomery, 47 Cal. App.2d 1, 117 P.2d 437, 446 (1941):
"`* * * While all persons accused of crime are to be treated on a basis of equality before the law, it does not follow that they are to be protected in the commission of crime. * * * The remedy for unequal enforcement of the law in such instances does not lie in the exoneration of the guilty at the expense of society. * * * Protection of the law will be extended to all persons equally in the pursuit of their lawful occupations, but no person has the right to demand protection of the law in the commission of a crime. * * *'" 213 Or. at 639-40, 325 P.2d at 804.
Notwithstanding this reference to the Montgomery rationale, the court based its decision to deny the equal protection claim on the ground that insufficient evidence was produced to indicate a wrongful and intentional discrimination, or "concerted and evil action" necessary to invoke the equal protection clause. 213 Or. at 640, 325 P.2d 794. Rather, the evidence merely indicated "widespread neglect" or "laxity" in the enforcement of the law by the district attorney, which could not be held to be a denial of the equal protection. The rationale in Montgomery referred to by the court in Hicks was later expressly disapproved by the California Supreme Court in Murguia v. Municipal Court for Bakersfield J.D., 15 Cal.3d 286, 124 Cal. Rptr. 204, 540 P.2d 44 (1975), which held that the equal protection clause safeguards individuals from intentional and purposeful invidious discrimination in enforcement of all laws, including penal statutes.
*560 The key to a claim of constitutionally objectionable enforcement is evidence of deliberate invidious discrimination. The fact that a criminal statute leaves room for the exercise of discretion in its enforcement does not of itself give rise to a violation of equal protection. In exercise of constitutionally permissible prosecutional discretion, the state may decide not only who to prosecute, Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); State v. Hicks, supra, but also which of two applicable statutes will be used to prosecute. In Hutcherson v. United States, 120 U.S.App. D.C. 274, 345 F.2d 964, cert denied 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965), the court rejected defendant's claim that it was a violation of due process to prosecute a person under a federal statute rather than under a provision of the D.C.Code which covered identical conduct but authorized far less severe penalties: "* * * A defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution. * * *" 120 U.S.App.D.C. at 277, 345 F.2d at 967. This same language was quoted in Wester v. State, 528 P.2d 1179, 1185 (Alaska), cert denied 423 U.S. 836, 96 S.Ct. 60, 46 L.Ed.2d 54 (1974), where the court upheld a prosecution under the state statute rather than an equally applicable municipal ordinance in face of an equal protection challenge.
In exercising its discretion to prosecute, the state is limited by the constitutional prohibition against intentionally, purposefully discriminating against a group of people on the basis of an arbitrary classification. The United States Supreme Court in three recent cases reiterated the principle that a person challenging an official act as a violation of the Equal Protection Clause must establish that the purpose, not the result, was invidiously discriminatory. In Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), a black applicant for a civil service appointment alleged a portion of the civil service test discriminated against blacks as a racial class. It was shown that blacks in a disproportionately high number failed this portion of the examination. The court, while agreeing the impact of the examination was to exclude a high number of blacks, held this was insufficient to establish administration of the test was racially motivated.
The requirement that purpose, not impact, be proven was reiterated in Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). In that case a zoning ordinance was challenged as a denial of equal protection on the grounds the impact of the zoning, which excluded low income housing, was to exclude blacks from living in Arlington Heights. The court, in denying the constitutional challenge, cited Washington v. Davis, supra, and said that case "* * * made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. `Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.' [cite omitted] Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. * * *" It is not necessary, the court stated, to show the challenged action rested solely on racially discriminatory purpose. But it must be proven that objectionably discriminatory intent was the primary or dominant motive for the official action.
The third case, Massachusetts v. Feeney, ___ U.S. ___, 98 S.Ct. 252, 54 L.Ed.2d 169 (1977), arose in the United States District Court for Massachusetts, 415 F. Supp. 485 (D.Mass. 1976). A three judge panel held the Massachusetts' statute which gave veterans a preference on civil service hiring lists beyond their test scores was a violation of the Equal Protection Clause of the United States Constitution. The plaintiffs, female civil service applicants, alleged the veterans' preference provision of the civil service law discriminated against women. The basis of this argument was proof that the military induction statutes and policies of the United States resulted in only a small number of women being in the military and hence a disproportionately small number of women being eligible for the *561 veterans' preference. The result being, as the court found, that few women will ever achieve the higher positions in civil service since there are a large number of male veterans who are given preference in hiring. The court found the veterans' preference provision was a responsible policy to promote reintegration of veterans into economic life and to reward military service, but held that the result of the statutory scheme and not the intent was what mattered.
The United States Supreme Court, in a summary order, vacated the judgment of the District Court and remanded the case for reconsideration in light of Washington v. Davis, supra. The clear import of the Supreme Court's summary disposition is that the District Court decision, based on a finding of discriminatory impact rather than on the purpose of the civil service act, was incorrect.
In essence the court in Massachusetts v. Feeney, supra, found the statutes and governmental policies respecting induction into the military excluded a substantially large proportion of the female population from participation in the armed forces. This created a class of veterans with a disproportionately large number of men. The veterans' preference statute then was applied to this unbalanced class. The result being that women are excluded from the veterans' preference provision of the act.
In the case at bar the analysis is essentially the same. The policies of the city of Newberg of housing women in the county jail, and healthy men in the city jail, results in a larger proportion of women being in the county jail. The decision to charge based upon the location of the incarcerated person results in more women than men being charged under state statute.
The implication of the Supreme Court's vacation of the judgment in Massachusetts v. Feeney, supra, is that this analysis does not result in a finding of unequal protection. The proper test is whether the challenged official actions, i.e., according the veterans' preference and charging under state statute, is the result of an intent to invidiously discriminate. There is no showing the policies segregating women in the jail facilities, and charging a person under a statute or ordinance based on their location, was motivated by a plan to discriminate against women in charging a violation of law. In fact the evidence shows the policies are grounded in the necessity to segregate women prisoners because of inadequate facilities in the city jail. We cannot second guess the wisdom of this solution to the lack of jail facilities. Nor can we second guess the wisdom of the decision to follow the most convenient and presumably the less expensive route of charging a person based on the location of their incarceration. Such decisions may be the result of selecting from competing or alternative policies and a consideration of the costs involved. Both policies appear to be a responsible solution to the problem presented and do not indicate a purpose to discriminate.
In addition the different treatment claimed by defendant is illusory. Her sole claim of unequal treatment is that she was charged under a statute with a maximum penalty twice that provided by the comparable city ordinance under which she could have been charged. In fact she was placed on one year probation on condition she serve two days in the county jail and complete 40 hours of volunteer community service. This is less than the maximum provided by the city ordinance.
State of Oregon v. Pirkey, 203 Or. 697, 281 P.2d 698 (1955), cited by defendant as her principal authority, is not apposite. There the Supreme Court held Oregon Laws 1949, ch. 129, § 1, to be unconstitutional. The statute prohibited the drawing of an insufficient funds check and provided the drawer would be charged with a felony or a misdemeanor. The court held the statute provided no criteria for the grand jury or the magistrate to determine whether an individual should be charged with a felony or a misdemeanor. Since similarly situated individuals could be treated differently under this statutory scheme it violated the Equal Protection Clause of the United States Constitution. The statute, by its terms, was unconstitutional.
*562 The case at bar, unlike Pirkey, involves a statute and an ordinance which are facially neutral and involves no constitutional infirmity by its terms. The challenged official conduct is the policy of jailing women and charging them under state statute. The distinction is material. A statute which on its face provides unequal treatment and no rational basis for such different treatment can be declared unconstitutional without inquiry into its application. A statute or other official action which is neutral by its terms must be shown to have an invidiously discriminatory purpose to sustain a constitutional challenge. Pirkey does not define the decisional criteria applicable to defendant's claim of unequal protection.
We hold the defendant has failed to establish any concerted and purposeful action to discriminate against her as a member of a defined class.
Affirmed.
LEE, Judge, specially concurring.
I concur in the result but disagree with the analysis of the majority because I believe that the majority erroneously states the crucial test for this case to be whether "the purpose, not the result, was invidiously discriminatory." (Slip opinion at 560.) That is the wrong standard because Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), on which the majority relies, is a de facto discrimination case as distinguished from the instant case which is de jure discrimination.
De facto discrimination is unintentional  it results when state action that is nondiscriminatory by its intended application has a discriminatory effect. However, in the instant case the discrimination is de jure because the city acted with the purpose or intent to segregate. See, Washington v. Davis, supra at 240, 96 S.Ct. 2040. Cf. Keyes v. School District No. 1, Denver, Colo., 413 U.S. 189, 208, 93 S.Ct. 2628, 37 L.Ed.2d 548 (1973). The Supreme Court has not, as yet, added the requirement that the state act with an "invidiously discriminatory" purpose in a case such as the one at bar.
Nevertheless, I concur in the result in the instant case because the appellant's punishment was less than that which might have been received under the municipal ordinance.