# CITY OF EUGENE,
## *Respondent,*

*v.*

# CROOKS et ux,
## *Appellants.*

## (No. 16-79-04405, CA 19329)

637 P2d 1350

Terence J. Hammons, Eugene, argued the cause for appellants. With him on the briefs was Hammons & Jensen, Eugene.

John L. Franklin, Eugene, argued the cause for respondent. On the brief were Johnson, Harrang, Swanson & Long, John B. Arnold, and Timothy J. Sercombe, Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

The City of Eugene (plaintiff) brought this suit under ORS 30.315 to enjoin violation of its zoning ordinance and the Oregon Structural Specialty Code. Defendants Crooks (defendants) appeal from the decree entered against them, claiming that they are victims of unlawful discrimination in the enforcement of plaintiff's ordinances and that the decree was improper, because it grants relief which is not requested in the complaint or justified by their stipulations.

Plaintiff's zoning ordinances permit duplexes on certain sized corner lots in R-1 Single Family zones. In 1968, plaintiff approved a building permit and a certificate of occupancy for a duplex on the corner lot now owned by defendants. At some point, however, the duplex was converted into an illegal four-unit apartment house by installing panels which divided each side of the duplex into a main and a bachelor apartment and by putting a stove, kitchen sink and refrigerator into each bachelor apartment. Defendants rented the four units separately to the other defendants below,[1] in violation of applicable zoning and structural ordinances. Plaintiff became aware of these violations when a former tenant complained. When defendants refused to cease using the building as an apartment house, plaintiff brought this suit. Defendants stipulated to the violations, and the trial court reached its decision on the basis of the pleadings, stipulations and facts deemed admitted by defendants' failure to respond to plaintiff's request for admissions.

Defendants contend, in their first assignment of error, that the trial court erred in sustaining a demurrer to their fourth affirmative defense, which alleged that plaintiff, in enforcing these ordinances against defendants, engaged in "intentional, arbitrary discrimination" and, thus, denied them equal protection of the law.

It is well established that enforcement of a law which is not discriminatory on its face can violate the equal

---

[1] Only defendants Crooks appeal.

protection clause[2] if whether, or how, the law is applied hinges upon a *de facto* improper classification. *Yick Wo v. Hopkins,* 118 US 356, 373, 6 S Ct 1064, 30 L Ed 220 (1885); *State v. Hodgdon,* 31 Or App 791, 797, 571 P2d 557 (1977). To be constitutionally improper, however, selectivity of enforcement must be deliberately based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 US 448, 456, 82 S Ct 501, 7 L Ed 2d 446 (1962). Unless suspect classes are involved in the selective enforcement, the equal protection clause is violated only if there is no rational basis to justify the selective enforcement. *See Williamson v. Lee Optical Co.,* 348 US 483, 487-488, 75 S Ct 461, 99 L Ed 563 (1955). For that reason, the mere fact that law enforcement agencies prosecute some violations of the law but not others does not of itself constitute prohibited discrimination. *Oyler v. Boles, supra,* 368 US at 456.

Unfortunately, these principles are much clearer than defendants' allegations. It is difficult to discern precisely what classification defendants claim plaintiff made in prosecuting them.[3] We think, however, that defendants can be fairly said to claim the following: (1) plaintiff does not prosecute all violations of which it is aware; (2) plaintiff prosecuted defendants only because it received a complaint; (3) the persons who brought the complaint were motivated by spite; (4) plaintiff's enforcement personnel were friends of the persons who made the complaint; and (5) these personnel pursued the complaint in order to vindicate their friends.

---

[2] The parties have treated the state and federal constitutional provisions as coextensive and for purposes of this case we do likewise. *Olsen v. State ex rel Johnson,* 276 Or 9, 16-17, 554 P2d 139 (1976).

[3] Defendants' fourth affirmative defense reads, in its entirety, as follows:

"Uses identical to that complained of in this case exist and have existed in R-1 zones within the corporate limits of Plaintiff in great numbers. Plaintiff is aware of such uses and has taken no action to enforce its ordinances to abate those uses. This enforcement proceeding is the result of intentional discrimination by agents of Plaintiff against Defendants Crooks, and has been brought only because prior tenants of Defendants Crooks requested such action from personal friends within Plaintiff's Department of Public Works, which is charged with enforcement of Plaintiff's zoning ordinances. The prior tenants made such a request after a dispute with Defendants Crooks over the return of a security deposit and the agents of Plaintiff as set forth above commenced this enforcement proceeding solely to cause injury, expense and harm to Defendants Crooks and not for purposes of enforcing the Eugene City Code."

■ It is clear that defendants have failed to allege that any selective enforcement against them was based upon their membership in a suspect class. Accordingly, defendants can prevail on their equal protection argument only if there is no rational basis to justify the alleged selectivity in enforcement. Defendants allege that plaintiff prosecuted their violation only because a complaint was received. We can easily imagine sensible reasons *(e.g.,* lack of funds) why plaintiff might distinguish between violations of which it is generally aware and violations about which a complaint is received. Such selective enforcement is not irrational. *People v. L. A. Witherill, Inc.,* 29 NY2d 446, 449, 328 NYS2d 668, 278 NE2d 905 (1972); *Pier I Imports, Inc. v. Pitcher,* 270 So2d 228 (La App 1972), *cert den* 272 So2d 696 (La 1973).

Otherwise, defendants' allegations are little more than an attack on the motives of the complaining tenants and the persons who prosecuted the violations and, as such, serve only to cloud the issue. It is inconsequential that the complaining tenants and plaintiff's employees are friends, for it would be nonsense to forbid law enforcement personnel from moving against illegal activity when the violation is reported by a friend. Because the complaining tenants are not agents of the city, their motives are irrelevant under any analysis. As for the motives of plaintiff's employees, the issue for purposes of the Equal Protection clause is only whether the class of persons against which the laws have been enforced itself is irrational. As we have pointed out, defendants allege no pattern of enforcement against any suspect group. They allege only that enforcement *in this instance* was undertaken because the complaining parties were friends of enforcement personnel. Selective enforcement based upon complaints is not *per se* improper, and the motives of plaintiff's agents in prosecuting a *particular violation not involving a suspect class* has no constitutional significance.

■ The decree below requires, among other things, that defendants remove the stove, refrigerator, and kitchen sink from each bachelor apartment and the panels which separate the main and bachelor apartments. In their second assignment of error, defendants contend that it was error to require physical alteration of the premises, both because

physical alteration is not required under plaintiff's ordinances and because alteration exceeds the relief sought in the complaint or agreed to in the stipulation. Rather, they contend, injunctive relief prohibiting further improper *uses* of the building, *i.e.,* prohibiting rental to more than two families, is all that was pleaded and all that can be required under applicable ordinances. The complaint, however, clearly alleged structural code violations, as well as improper uses. Specifically, it was alleged that defendants violated § 306(a) of the Oregon Structural Specialty Code (hereafter Building Code), which provides:

"No building * * * shall be used or occupied, and no change in the existing occupancy classification of a building * * * shall be made until the Building Official has issued a Certificate of Occupancy therefor as provided herein."

The Building Code elsewhere provides that a duplex is classified as "dwelling," § 405, and as such requires a Group R, Division 3 certificate of occupancy, § 1401. An "apartment," on the other hand, is defined as any building which is "designed" or "built" or rented as a home for three or more families living independently of each other, § 402, and requires a Group R, Division 1 certificate of occupancy. § 1301. Defendants conceded that the application for a building permit, the permit itself and the certificate of occupancy issued by plaintiff all indicated that the building was to be designed, constructed, and occupied as a duplex, but that the installation of the panels and extra housekeeping facilities converted it into an apartment house. Thus, regardless of how it is actually being used, as long as the building is an apartment house, it is in violation of § 306(a), and this section prohibits using the building in any manner as long as the violation continues.

Defendants contend that because the complaint did not expressly request physical alterations, and because they did not expressly stipulate to make any particular changes, the decree was improper as a "surprise" to them, and an additional evidentiary hearing is necessary in order to determine what, if any, alterations should be made. We find defendants' claim of surprise somewhat disingenuous.

The defendants stipulated that plaintiff was entitled to some relief and

"* * * agree[d] that Plaintiff may inspect the interior of the fourplex, not later than ten (10) days from the date of Plaintiff's Judgment entered herein, for the purpose of ascertaining whether Defendants have altered the structure so that it may be used for no more than two families living independently of each other."

Thus, defendants' assertion that they were surprised, because they agreed only "that Plaintiff could inspect the interior of the building to ascertain if Defendants had altered it, but they did not agree to do so," is difficult to accept, and we are satisfied that both parties contemplated that some changes would, in fact, be made to correct the violations.

Affirmed.