Argued and submitted September 28, affirmed November 21, 1984

STATE OF OREGON,
*Respondent,*

*v.*

RICHARD E. WOOD,
*Appellant.*

(C83-06-33043; CA A32257)

STATE OF OREGON,
*Respondent,*

*v.*

GREEN'S SEAFOODS, INC.,
*Appellant.*

(C83-06-33040; CA A32258)
(Cases Consolidated)

691 P2d 116

Dennis V. Griffiths, Portland, argued the cause and filed the brief for appellants.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is a consolidated appeal by defendants Wood and Green's Seafoods, Inc. (Green's), following convictions for the felony crime of buying and possessing food fish (salmon) unlawfully caught during a closed season. ORS 509.011(2)(a); ORS 506.991(3). Defendants assign error to the denial of motions to dismiss the indictments[1] and to the admission at trial of rebuttal evidence that Wood had bought illegal sturgeon roe on other occasions. We affirm.

Wood is the president and manager of Green's, a wholesale fish dealer in Portland. Defendants became the target of a state police undercover investigation of purchases and sales of salmon caught out of season. In the spring of 1983, Cooke, an undercover police officer posing as a licensed fish wholesaler, sold them illegally caught salmon. Defendants were indicted for violating ORS 509.011(2)(a):

"(2)  It is unlawful to

"(a)  Buy, receive, possess or sell food fish unlawfully caught during the closed season."

We first consider defendants' four assignments of error that concern the denial of the motions to dismiss. Defendants first argue that the fish lost "the taint of their unlawful status" when they were obtained by the police. Police officers are required to seize "[a]ll fish taken by or in the possession of any person in violation of the commercial fishing laws." ORS 506.690(1). ORS 506.690(2) provides in part:

---

[1] Defendants were separately indicted. The motions to dismiss were on the following grounds:

"1. That alleged purchases were not unlawful since the state lawfully owned the fish at the time of the purchase.

"2. That arrest and prosecution of the defendants, and each of them, is unlawfully discriminatory enforcement in violation of his equal protection rights.

"3. That the statute under which defendants and each of them are charged is unconstitutionally vague for failure to fairly warn against prohibited conduct and penalty.

"4. That the state's investigation was carried out in violation of applicable state statutes and administrative rules making all evidence obtained thereby inadmissible."

After the motions were denied, defendants were tried together in a jury trial.

"Any fish seized under the provisions of subsection (l) of this section may be disposed of, sold, preserved or used for food purposes, under the rules of the commission, to prevent loss or spoilage * * *."

OAR 635-02-030 sets forth the requirements for sale or other disposition.[2]

■　Defendants argue that, because the statutes and the rule provide for the sale of illegally caught fish, the sale to defendants cannot be a crime. Alternatively, defendants argue that illegally caught fish are analogous to "stolen" property. That is, once the fish were obtained by the police they were no longer "illegal" and defendants may only be convicted of an attempt to commit a crime. *See State v. Niehuser,* 21 Or App 33, 533 P2d 834 (1975). We are not persuaded. The salmon sold to defendants were illegally caught. Defendant Wood knew that the salmon were illegally caught when he bought them. The fact that the state may sell illegal fish to prevent loss or spoilage does not alter the character of the fish to make them "legally caught." Defendants cannot benefit from the fact that the state has authority to sell fish under the circumstances described by ORS 506.690(2) and OAR 635-02-030.

Defendants next contend that they are the victims of "deliberate invidious discrimination prohibited under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." The basis of that claim is that Pacific Seafood, another fish wholesaler, was sold quantities of illegal fish but was not prosecuted. At the start of the undercover operation, the police had arranged with Pacific Seafood to purchase an anticipated overflow of illegal fish.

■■　Enforcement of a law which is not discriminatory on its face may violate the Equal Protection Clause when it is applied pursuant to a *de facto* improper classification. *Yick Wo v. Hopkins,* 118 US 356, 373, 6 S Ct 1064, 30 L Ed 220 (1885); *City of Eugene v. Crooks,* 55 Or App 351, 637 P2d l350 (1981),

---

[2] OAR 635-02-030 provides in pertinent part:

"To prevent spoilage, the fish so seized and not required as evidence shall be sold * * *. If it is not practical to sell seized fish to prevent spoilage, such fish may be provided for food purposes, free gratis to any state, county, or other public institution * * *."

*rev den* 292 Or 722 (1982). To establish their claim of discriminatory enforcement, defendants attempt to show that a similarly situated purchaser of illegal fish was not prosecuted. Pacific Seafood, unlike defendants, purchased illegal fish pursuant to an agreement with the police that they would act as a lawful clearing house for surplus fish. The record shows that there was a host of potential fish buyers. Defendants were not singled out for prosecution. At trial, Cooke testified that Green's was not the only commercial wholesaler targeted:

> "No they were not the only one. We virtually anticipated at the outset of the investigation to contact and offer illegal fish sales to as many of the licensed wholesale dealers and companies in the metropolitan area here in Portland as we could, and we ultimately did. We also offered fish and sold fish in Salem, Oregon, and also made offers to sell fish as far away as Eugene."

Cooke then testified that "[t]he only wholesale dealer that accepted the fish in the metropolitan area in Portland-these particular fish, in the spring of '83-was Green's Seafoods." Defendants have failed to establish the discriminatory enforcement of a penal statute.

In their third assignment, defendants argue that ORS 509.011 is unconstitutionally vague. Their argument is not that the statute is unclear, but, rather, that the penalty provision is not found in the statute itself or in the ORS chapter where the statute appears. The penalty for violating ORS 509.011 is found in ORS 506.991(3), which provides:

> "Violation of any provision of ORS 509.011 which occurs more than 12 hours prior to or more than 12 hours subsequent to a season established under ORS 506.129 by the commission for the lawful taking of food fish when the total value of the food fish is $200 or more is a Class C felony."

There is no requirement, constitutional or otherwise, that penalty provisions for specific statutes must be found within the statutes themselves or in the same ORS chapter. The index prefacing chapter 509 contains a specific cross-reference to the penalty provision of ORS 506.991. The vagueness challenge lacks merit.

Defendants' final assignment in connection with the motions to dismiss is that the state's investigation was carried out unlawfully in two respects: the manner in which it

disposed of the illegal fish that it had acquired and the use of the funds from the sale of fish.[3] Assuming, *arguendo,* that the state violated certain administrative procedures in conducting its undercover operation, such illegality is immaterial to the defendants' guilt unless the conduct violated some protected right of the defendant or the conduct reached a "demonstrable level of outrageousness." *Hampton v. United States,* 425 US 484, 96 S Ct 1646, 48 L Ed 2d 113 (1976). The fact that the police did not solicit bids when they sold the excess salmon to Pacific Seafoods, or that Cooke put money from the sale of the fish in an investigation account, instead of depositing the money with the State Treasurer, does not violate a protected right of defendants, nor does such conduct rise to the level of outrageousness sufficient to shield defendants from prosecution.

■       Defendants' final assignment of error concerns the admission of the rebuttal testimony of Cooke that defendant had bought illegal sturgeon roe on two occasions. At trial, Regan, an employe of Green's, was called as a defense witness. He testified on direct examination:

"A.    * * * [Cooke] came to Green's Seafoods while Mr. Wood was on vacation and wanted to sell some sturgeon eggs.

"Q.    All right. Could you give us the gist of that conversation, to the best of your recollection?

"A.    Yes. At the time, I wasn't really too sure, and he brought the eggs in without the fish, and we are not legal to buy eggs without fish, without the fish present.

"Q.    He did not have the fish present?

"A.    Right. He did not have the fish with him.

"Q.    What transpired at that point?

"A.    I told him we couldn't buy the eggs.

"Q.    Why is that?

"A.    Because he didn't have the fish. I said that our place doesn't buy illegal fish, and I could lose my job or get fired if I did buy anything illegal.

"* * * * *

---

[3] Defendants cite no authority for this argument. We understand the argument to be that illegal police activity invokes the Due Process Clause of the Fourteenth Amendment. Defendants made no claim on appeal that the police conduct constituted entrapment.

"Q. And, again, why were you especially concerned about whether or not they are legal or not?

"A. The owner made it perfectly clear to me if I bought any illegal fish whatsoever, I would lose my job on the spot."

The state then sought to put on rebuttal testimony by Cooke. After hearing his testimony outside the jury's presence, the trial court ruled that the testimony was admissible. Cooke testified that on March 8, 1983, Regan purchased illegal sturgeon eggs from him after Regan had conferred with Wood. Cooke testified that Wood was contacted at a later date to see if Green's would be interested in buying more sturgeon eggs. Wood said, "Yes, he would be," but he cautioned Cooke to be careful in dealing with the sturgeon eggs without a fish, because "the cops are looking very hard now at sturgeon egg sales." Cooke also testified that Wood described how an illegal sturgeon egg sale could be disguised by making false invoices of sturgeon purchases. Defendants maintain that the rebuttal testimony went beyond the very narrow limits of Regan's testimony regarding company policy on illegal fish sales and that it was more prejudicial than probative and confusing to the jury. Regan's testimony was not limited to company policy. Rather, he affirmatively put in issue whether he had bought sturgeon eggs from Cooke and whether Green's had ever puchased illegal sturgeon eggs. Regan's testimony opened the door to the rebuttal testimony.

OEC 403 governs the exclusion of certain relevant evidence:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Defendants do not explain how the probative value of the rebuttal testimony is substantially outweighed by the danger of unfair prejudice or confusion. The trial court did not abuse its discretion in admitting the rebuttal testimony.

Affirmed.