98 September 12, 2013 No. 38

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review*,

*v.*

LEONARD LLOYD REINKE,
*Petitioner on Review.*

(CC 090130185; CA A144138; SC S059760)

On review from the Court of Appeals.*

Argued and submitted on May 3, 2012, at Portland Community College, Portland, Oregon. Resubmitted January 7, 2013.

Ernest G. Lannet, Chief Deputy Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs was Peter Gartlan, Chief Defender.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Linder, and Landau, Justices.**

KISTLER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* Appeal from Multnomah County Circuit Court, Richard C. Baldwin, Judge. 245 Or App 33, 260 P3d 820 (2011).

** Brewer and Baldwin, JJ., did not participate in the consideration or decision of this case.

**KISTLER, J.**

Ordinarily, a trial court may impose up to a 10-year prison sentence on persons convicted of second-degree kidnapping. *See* ORS 161.605(2). However, if the court or a jury makes certain factual findings, the court may sentence a person convicted of second-degree kidnapping as a dangerous offender and impose a 30-year prison sentence. *See* ORS 161.725(1)(b) (authorizing the imposition of that sentence). The question in this case is whether the Oregon Constitution requires that the facts necessary to impose a dangerous offender sentence be found by the grand jury and pleaded in the indictment. Following this court's decisions, the trial court held that it does not, and the Court of Appeals affirmed in a per curiam opinion. *See* [*State v. Reinke*](#), 245 Or App 33, 260 P3d 820 (2011). We allowed defendant's petition for review and now affirm the Court of Appeals decision and the trial court's judgment.

The details of the crime that gave rise to this case are not material to the issues that defendant raises on review. Suffice it to say that defendant kidnapped the victim as part of an effort to persuade her not to testify against one of his friends. The friend had terrorized, raped, and sodomized the victim, and the victim feared that defendant would use a gun to harm her during the kidnapping. As a result of defendant's acts, the grand jury indicted him for, among other things, second-degree kidnapping. Before trial, the state notified defendant that it would ask the court to sentence him as a dangerous offender if he was convicted of second-degree kidnapping. At trial, defendant waived his right to a jury, and the trial court convicted him of that crime in addition to other crimes.

At the sentencing hearing, defendant did not dispute that the trial court could sentence him to up to 10 years' imprisonment for the crime of second-degree kidnapping. He argued, however, that the state could not seek a 30-year dangerous offender sentence because the grand jury had not found the facts necessary to impose that sentence. In defendant's view, under the state constitution, those sentencing facts were "elements" of the offense that had to be found by the grand jury and pleaded in the indictment. Relying on this court's cases, the trial court disagreed. The court ruled

that the state constitution only required the grand jury to find and plead the elements of second-degree kidnapping. The trial court proceeded to find the factual prerequisites for imposing a dangerous offender sentence and sentenced defendant to slightly more than 23 years in prison. The Court of Appeals affirmed the trial court's judgment. We allowed defendant's petition for review to consider whether sentence enhancement facts are elements of an offense that, as a matter of state constitutional law, the grand jury must find and the indictment must allege.[1]

Before considering that issue, we first set out the statutes that underlie defendant's constitutional challenge. ORS 163.225 defines the crime of second-degree kidnapping. A person commits that crime if, "with intent to interfere substanially with another person's liberty, and without consent or legal authority," the person "[t]akes [the other] person from one place to another" or "[s]ecretly confines the person in a place where the person is not likely to be found." ORS 163.225. Second-degree kidnapping is a Class B felony, which carries with it a 10-year maximum sentence. *See* ORS 163.225(3) (classifying second-degree kidnapping as a Class B felony); ORS 161.605(2) (authorizing 10-year maximum sentences for Class B felonies).

A separate statute authorizes trial courts to impose dangerous offender sentences if a defendant is convicted of a felony and certain criteria are met. ORS 161.725(1). As applied here, that statute permitted the trial court to sentence defendant as a dangerous offender and impose up to a 30-year sentence if it found that (1) "defendant [w]as being sentenced for a felony that seriously endangered the life or safety of another"; (2) defendant previously had been convicted of a separate felony; and (3) "defendant [w]as suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another." ORS 161.725(1)(b).[2]

---

[1] In Oregon, the state may charge a defendant with a felony by an indictment issued by the grand jury, by a prosecutor's information if the defendant waives indictment, or by a prosecutor's information followed by a preliminary hearing. *See* Or Const, Art VII (Amended), § 5. Because the state charged defendant by indictment, we refer only to that charging instrument.

[2] The criteria for sentencing a defendant as a dangerous offender differ based on the type of felony for which the defendant has been convicted. Because

We refer to facts that authorize the imposition of a greater sentence than that authorized by the underlying offense (in this case, the three facts necessary to impose a dangerous offender sentence) as "sentence enhancement facts." State statutes require that prosecutors give defendants timely written notice of sentence enhancement facts. ORS 136.765. They permit but do not require those facts to be found by the grand jury and pleaded in the indictment. *Id.* In this case, the grand jury did not find any sentence enhancement facts. Rather, as noted above, the state gave defendant separate written notice before trial that it intended to ask the court to impose a dangerous offender sentence and that it would seek to prove the applicable sentence enhancement facts at a separate sentencing hearing if the jury found defendant guilty of second-degree kidnapping.

On review, defendant does not dispute that the state gave him timely written notice that it intended to seek a dangerous offender sentence, as ORS 136.765 requires. Defendant also does not dispute that he knowingly waived his right to have a jury decide the facts necessary to impose that sentence. Finally, he does not dispute that the record permitted the trial court to find beyond a reasonable doubt each of the facts necessary to impose a dangerous offender sentence. Defendant's dispute centers on a narrower issue. He argues that, under the Oregon Constitution, the trial court could not consider whether to impose a dangerous offender sentence unless the grand jury first found probable cause to believe that the factual prerequisites for imposing that sentence existed and alleged those facts in the indictment.

This is not the first time that we have considered this issue. In 1988, the court rejected the defendant's argument that, because Article I, section 11, of the Oregon Constitution requires that some facts related to a defendant's sentence be found by the jury, the state constitution also requires that those facts be found by the grand jury and pleaded in the indictment. *State v. Wagner*, 305 Or 115, 171-72, 752 P2d 1136 (1988), *vac'd and rem'd on other grounds*, 492 US

---

defendant was convicted of a Class B felony, the criteria set out in ORS 167.725(1)(b) apply.

914, 109 S Ct 3235, 106 L Ed 2d 583 (1989). *Wagner* held that, under state law, an indictment must give a defendant notice of the elements of the crime he or she is charged with committing. *Id*. The indictment need not, however, give a defendant notice of any sentence enhancement facts that may increase the punishment for committing that crime. *Id*.

For some time, that state constitutional decision went unquestioned. However, in the mid-1990s, federal challenges to the pleading and proof of sentence enhancement facts began to be made. In *Almendarez-Torres v. United States*, 523 US 224, 228, 118 S Ct 1219, 140 L Ed 2d 350 (1998), the United States Supreme Court reiterated that, as a matter of federal constitutional law, an indictment in federal court "must set forth each element of the crime that it charges." The Court explained, however, that an indictment "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Id*. In *Almandarez-Torres*, the Court applied a five-factor test to determine whether a fact that enhanced a defendant's sentence was an element of the offense or a sentencing factor. *Id*. at 242-43. Two years later, the Court stated a different test to distinguish elements from sentencing factors for the purposes of the federal constitution. *Apprendi v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000). The Court held in *Apprendi* that, under the Sixth and Fourteenth Amendments, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*.

The decision in *Apprendi* arose out of a state criminal prosecution, and the Court was careful to note in *Apprendi* that the Fourteenth Amendment had "not been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury' that was implicated in our recent decision in *Almendarez-Torres v. United States*, 523 US 224 (1998)." 530 US at 477 n 3. The Court accordingly did not hold in *Apprendi* that the Fifth Amendment requires states to include sentence enhancement facts in the indictment. *Accord Ring v. Arizona*, 536 US 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002).

After *Apprendi*, some defendants argued in this court that we should hold that the federal constitution requires states to include sentence enhancement facts in indictments. Given *Apprendi*'s reasoning, we explained in *State v. Cox*, 337 Or 477, 498-500, 98 P3d 1103 (2004), that the defendant's unpreserved federal constitutional claim raising that issue did not constitute plain error and did not reach it. Shortly after this court decided *Cox*, another case squarely presented the issue, and we explained that, "[a]lthough *Apprendi* requires that the jury find the facts that would support an enhanced sentence, we do not agree that *Apprendi* requires, as a matter of state criminal procedure, that enhancement factors be set out in the indictment." *State v. Sawatzky*, 339 Or 689, 698, 125 P3d 722 (2005). The court explained that neither *Apprendi* nor *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), had held that the Grand Jury Clause of the Fifth Amendment applies to the states and that the relevant question under state law is whether the indictment sets out the elements of the offense, as defined by the state legislature. *Id.*; *cf. Hurtado v. California*, 110 US 516, 534-35, 4 S Ct 111, 28 L Ed 232 (1884) (holding that due process does not require states to proceed by indictment in felony cases).

After *Sawatzky*, some defendants returned to the argument that this court had considered and rejected in *Wagner*. They argued that, even if the federal constitution does not require that state indictments include sentence enhancement facts, the state constitution imposes that requirement. Those defendants argued, in effect, that we should interpret the state constitution the same way that the federal courts had interpreted the Grand Jury Clause of the Fifth Amendment; that is, we should hold that, as a matter of state constitutional law, sentence enhancement facts are elements of the offense that must be pleaded in the indictment. This court has consistently rejected those arguments and has adhered to its holding in *Wagner* that, as a matter of state constitutional law, the legislature defines the elements of the offense that must be pleaded in an indictment and that, as a matter of legislative intent, a crime does not include sentence enhancement facts. *See, e.g.*, *State v. Johnson*, 340 Or 319, 352, 131 P3d 173 (2006) (rejecting the

argument that, because the state and federal constitutions require the jury to find certain sentencing factors, the grand jury must do so); *State v. Oatney*, 335 Or 276, 292-97, 66 P3d 475 (2003) (same), *cert den*, 540 US 1151 (2004); *State v. Compton*, 333 Or 274, 295-96, 39 P3d 833 (same), *cert den*, 537 US 841 (2002).

Defendant asks us to revisit those state constitutional holdings. He contends that Article VII (Amended), section 5, and Article I, section 11, of the Oregon Constitution require that sentence enhancement facts be found by the grand jury and pleaded in the indictment. He acknowledges that, for us to agree with him, we would have to overrule our decision in *Wagner* and all our cases that have followed it. He argues, however, that the parties in those cases did not brief the state constitutional issues fully, nor did this court undertake the thorough textual and historical analysis of those constitutional provisions that we have undertaken in other cases. *See Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (explaining the methodology for interpreting original constitutional provisions). In this case, defendant and the state have engaged in an extensive analysis of those provisions, and we turn to the question whether, in light of the text of Article VII (Amended), section 5, and Article I, section 11, the history of those provisions, and our cases interpreting them, *Wagner* erred in holding that, under the Oregon Constitution, the grand jury need not find sentence enhancement facts or plead them in the indictment.

## I. ARTICLE VII (AMENDED), SECTION 5

The current version of Article VII (Amended), section 5, consists of seven subsections that, among other things, authorize the legislature to provide for the selection of jurors and grand jurors, specify the number of grand jurors who comprise the grand jury, and determine the number of jurors necessary to render a verdict in civil cases. *See, e.g.*, Or Const, Art VII (Amended), § 5(1), (2), and (7). Three subsections bear on the issue that defendant raises in this case. Subsection 3 is the state analogue of the Grand Jury Clause of the Fifth Amendment. It provides that "a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a

grand jury." *Id.* § 5(3).[3] Subsections 4 and 5 state exceptions to that rule. Subsection 4 provides that the district attorney may charge a person with "a crime punishable as a felony" by information if the person appears in circuit court and waives indictment. *Id.* § 5(4). Subsection 5 provides that the district attorney may charge a person by information if, after a preliminary hearing before a magistrate, "the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it." *Id.* § 5(5).

Article VII (Amended), section 5, requires the state to proceed by an indictment or an information if it wishes to charge a "crime punishable as a felony." As we understand it, defendant's argument under that section turns on the proposition that the constitutional phrase "a crime punishable as a felony" refers not only to the elements of the underlying crime but also to any fact that authorizes an enhanced sentence for that crime; that is, he views the word "crime" as referring to both the elements of the offense and any sentence enhancement fact that the prosecutor invokes as a basis for seeking a greater sentence.

The people enacted the current version of Article VII (Amended), section 5, in 1974 after the legislature referred an amendment to that section to the voters. *See* Or Laws 1973, SJR 1 (referring the measure).[4] We interpret an initiated or referred constitutional amendment the same way that we interpret a statute; that is, we look to the text, context, and legislative history of the amendment to determine the intent of the voters in providing that "a person shall be charged *** with a crime punishable as a felony only on indictment by a grand jury." *See State v. Harrell*, 353 Or 247, 254-55, 297 P3d 461 (2013) (referred constitutional amendments); *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559-60, 871 P2d 106 (1994) (initiated constitutional amendments).

---

[3] The Grand Jury Clause of the Fifth Amendment similarly provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" US Const, Amend V.

[4] The legislatively referred measure repealed the existing text of section 5 and replaced it with the current text of that section. *See* Or Laws 1973, SJR 1 (referring the measure).

The text of subsection 5(3) is difficult to square with defendant's argument. Ordinarily, the word "crime" means:

> "an act or the commission of an act that is forbidden or the omission of a duty that is commanded by a public law of a sovereign state to the injury of the public welfare and that makes the offender liable to punishment by that law in a proceeding brought against him by the state by indictment, information, complaint, or similar criminal procedure."

*Webster's Third New Int'l Dictionary* 536 (unabridged ed 1971); *see Dept. of Rev. v. Faris*, 345 Or 97, 101, 190 P3d 364 (2008) (looking to the dictionary definition for the ordinary meaning of a word). The acts that the criminal code forbids are the elements of second-degree kidnapping, as set out in ORS 163.225. To paraphrase the court's reasoning in *Wagner*, a defendant commits the "crime" of second-degree kidnapping without regard to whether he or she is sentenced as a dangerous offender or not. It follows that the elements of the crime of kidnapping are all that the text of Article VII (Amended), section 5(3), requires the grand jury to find.[5]

The context leads to the same conclusion. Context includes "the preexisting common law and the statutory framework within which the law was enacted." *Klamath Irrigation District v. United States*, 348 Or 15, 23, 227 P3d 1145 (2010). Article VII (Amended), section 5, has a lengthy history. When the people first adopted the Oregon Constitution, they provided that,

> "The Legislative Assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the Court, seven shall be chosen by lot as grand Jurors, Five of whom must concur to find an indictment: But the Legislative Assembly may modify or abolish grand Juries."

Or Const, Art VII (Original), § 18 (1857). As originally enacted, the grand jury provision did not specify what the grand jury had to find to indict a defendant. The original provision, however, authorized the legislature to modify or abolish grand juries. To the extent that the original provision sheds

---

[5] The phrase that modifies the noun "crime"—"punishable as a felony"—adds nothing to defendant's argument. It simply makes clear that, as used in Article VII (Amended), section 5(3), the term "crime" refers only to felonies.

any light on the issue that defendant raises, it suggests that the legislature's power to abolish the grand jury included the lesser power to define both how the grand jury functioned and what it needed to find to issue an indictment.

In 1899, the legislature authorized district attorneys to file a prosecutor's information rather than an indictment "charging any person or persons with the commission of any crime defined and made punishable by any of the laws of this state." Or Laws 1899, § 1, p 99. The legislative amendment departed from the common law in that it permitted the use of an information, without more, to charge a felony. *See Hurtado*, 110 US at 534-35 (holding that the federal constitution permitted states to use a prosecutor's information to charge felonies in derogation of the common law).[6]

In 1908, the people voted to amend Article VII (Original), section 18, and made a grand jury indictment mandatory for both crimes and misdemeanors. See Or Laws 1909, p 12. As amended, Article VII (Original), section 18 (1909), provided:

> "No person shall be charged in any Circuit Court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by a grand jury. *Provided, however*, that any District Attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in form."

Between 1908 and 1973, the people amended Article VII three more times.[7] The phrase relevant to this case "crime

---

[6] A prosecutor's information was a statement, usually sworn, that had not been tested either by the grand jury or the court and was not sufficient at common law to charge a felony. *See* Joel Prentiss Bishop, 1 *Commentaries on the Law of Criminal Procedure* §§ 141-44 (1872). Under the current version of Article VII (Amended), section 5, a district attorney can charge a felony by information only if the defendant either waives indictment or the information is followed by a preliminary hearing at which a magistrate determines that probable cause exists to believe that the defendant committed the charged crime.

[7] In 1910, the people adopted Article VII (Amended). *See* Or Laws 1911, p 8. Article VII (Amended), section 5(5) (1911), incorporated the wording of Article VII (Original), section 18 (1909). *See id.* In 1927, the people amended Article VII (Amended), section 5(5), by adding a second proviso that authorized a defendant to waive indictment and proceed by information. Or Laws 1929, pp 5-6. Finally, in 1958, the people repealed Article VII (Original), section 18, and made minor grammatical changes to Article VII (Amended), section 5(5). Or Laws 1959, p 6.

or misdemeanor" appeared in the 1908 amendment and remained unchanged during that period. In 1908, the phrase "crime or misdemeanor" referred to the prohibited acts that constitute those offenses. *See Webster's Int'l Dictionary* 344 (unabridged ed 1900) (defining "crime" as "[a]ny violation of law"); *id.* at 929 (defining "misdemeanor" as "[a] crime less than a felony"). Nothing in the contemporaneous definitions of those terms suggests that the grand jury had to find any sentence enhancement facts.

The same conclusion follows from the participial phrase "defined or made punishable by the laws of this state" that modifies "crime or misdemeanor." The "laws of this state" that define or make punishable crimes or misdemeanors are the criminal laws that define the prohibited acts. At least, that is the ordinary reading of the text of the 1908 amendment, which serves as context for the 1974 amendment to Article VII (Amended), section 5.

This court's cases have confirmed that ordinary reading of Article VII (Amended), section 5. *See State v. Hicks*, 213 Or 619, 641, 325 P2d 794 (1958). In *Hicks*, the defendant argued that Article VII (Amended), section 5 (1929), required that sentence enhancement facts be pleaded in the indictment. *Id.* at 640-41. This court rejected that argument, reasoning:

> "The words 'charged *** with the commission of any crime ***' refer to the conventional charge accusing a defendant of criminal acts for the commission of which the state seeks to impose punishment. This court has uniformly construed that provision as being inapplicable to an information under the Habitual Criminal Act [which provides for enhanced sentences for defendants with prior convictions]. If such had not been the construction [of Article VII (Amended), section 5], the [habitual criminal] act could never have been applied in this or in many other states."

*Id.* at 641 (ellipses in original). This court squarely held in *Hicks* that Article VII (Amended), section 5 (1929), required only that the grand jury determine that there is probable cause to find the elements of the "conventional charge." According to *Hicks*, that section did not also require the grand jury to find sentence enhancement facts. *Hicks*'s interpretation of the word "crime" in Article VII (Amended),

section 5 (1929), forms the backdrop against which the 1974 amendment to that article was adopted and informs the meaning of the word "crime" in the 1974 amendment. *See Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007).

A different strand of case law also informs the understanding of the grand jury provision that the voters adopted in 1974. That case law addresses the relationship among the common law, the legislature's authority to provide what an indictment must contain, and Article VII (Amended), section 5. At common law, if the punishment for a crime was enhanced, then the grand jury had to find both the elements of the crime and the sentence enhancement facts. *See State v. Waterhouse*, 209 Or 424, 429-31, 307 P2d 327 (1957) (describing the common-law practice). As early as 1824, however, the Massachusetts Supreme Judicial Court held that the legislature could vary the common law and provide that sentence enhancement facts need not be found by the grand jury and included in the indictment. *See Ross's Case*, 19 Mass 165, 171 (1824). It was sufficient, the Massachusetts court held, to give the defendant notice of those sentencing facts by a different means and prove them at a separate sentencing hearing. *Id.* More specifically, the court rejected the defendant's argument that sentence enhancement facts (in that case, a prior conviction) had to be included in the indictment. *See id.* and n 2.

Consistently with *Ross's Case*, this court and other courts held before 1974 that state legislatures retain the power to vary the common law and provide for notice of sentence enhancement facts separately from the indictment. *See, e.g.*, *State v. Smith*, 128 Or 515, 522-23, 273 P 323 (1929); *People v. Gowasky*, 244 NY 451, 155 NE 737 (1929); *cf. Graham v. West Virginia*, 224 US 616, 625-29, 32 S Ct 583, 56 L Ed 917 (1912) (following the reasoning in *Ross's Case* and holding that a state statute similar to the one in *Ross's Case* did not violate the Due Process Clause). However, if the legislature failed to specify that sentence enhancement facts need not be pleaded in the indictment, then this court inferred that the legislature "intended that the common-law procedure should govern." *Waterhouse*, 209 Or at 434; *cf.*

*State v. Newlin*, 92 Or 589, 182 P 133 (1919); *State v. Newlin*, 92 Or 597, 182 P 135 (1919).[8] Specifically, the court concluded that, if the legislature did not provide for notice of sentence enhancement facts by some means other than by indictment, then the sentence enhancement fact had to be pleaded in the indictment. That was so whether the sentence enhancement fact was offense or offender specific. *See State v. Blacker*, 234 Or 131, 135-36, 380 P2d 789 (1963) (applying the same rule to offense-specific sentence enhancement facts).

There is a suggestion in defendant's brief that, when the people adopted Article VII (Amended), section 5, in 1974, they would have understood that sentence enhancement facts that went to the offender's character need not be pleaded in the indictment, but that sentence enhancement factors that went to the nature of the offense must be pleaded in the indictment. None of the cases decided before 1974 drew that distinction, however. And, as noted, this court applied the same legislative presumption in *Blacker* to offense-specific enhancement facts that it applied to offender-specific enhancement facts; that is, it held that an offense-specific enhancement fact had to be pleaded in the indictment unless the legislature had provided otherwise. 234 Or at 135-36.[9]

When the people adopted the current version of Article VII (Amended), section 5 in 1974, the state of the law in Oregon and elsewhere was that the common law required

---

[8] The court did not explain its reasoning in either of the *Newlin* cases, but the statute authorizing enhanced sentences for prior convictions for selling intoxicating liquor did not specify that the state need not plead the prior conviction in the indictment, *see* Oregon Laws, title XIX, ch VIII, § 2224-61 (1920), and the court held that the failure to include the prior convictions in the indictment precluded the state from seeking an enhanced punishment based on the defendant's prior conviction.

[9] Defendant also appears to rely on *State v. Hoffman*, 236 Or 98, 385 P2d 741 (1963), to support a different view of the pre-1974 case law. His reliance on *Hoffman* is misplaced. In that case, the court recognized that, at common law, "a prior conviction was regarded as part of an indictment which must be established when the Crown sought to invoke an enhanced penalty for the crime charged." *Id.* at 104-05 (citing *Blacker* and *Waterhouse*). It recognized, however, that the legislature could and had provided that those sentence enhancement facts were not part of the crime and need not be pleaded in the indictment. *Id.* In reaching that conclusion, the court did not distinguish between different types of sentence enhancement facts. Rather, what mattered in the court's analysis was that those sentence enhancement facts were not "acts declared to be criminal by legislative action." *Id.* at 107.

that sentence enhancement facts be pleaded in an indictment, but the legislature had the power to specify otherwise. The question whether the grand jury had to find and plead sentence enhancement facts turned on legislative intent. If the legislature had manifested its intent to depart from the common-law rule, then the grand jury did not have to find or plead any sentence enhance facts. Rather, to borrow the phrase that this court used in *Hicks*, the grand jury had to find and plead only the elements of the "conventional charge." The context demonstrates that, when the people adopted the current version of Article VII (Amended), section 5, they would have understood that whether a sentence enhancement fact was an element of the crime that had to be pleaded in the indictment was a question of legislative intent and turned on whether the legislature had provided a means of giving notice of those facts other than by indictment.

Not only is the context at odds with defendant's interpretation of Article VII (Amended), section 5, but the legislative history of the current version of that section does not support defendant's position. As noted, the people adopted the current version of section 5 in 1974 after the legislature referred a measure to the people. The official explanation accompanying the measure stated that its purpose was to give prosecutors greater latitude to charge by information. *See* Official Voters' Pamphlet, General Election, Nov 5, 1974, 13. The explanation told the voters that the new procedure would ensure that there is probable cause that "a felony has been committed." *Id.* Similarly, the ballot title for the measure explained that a grand jury indictment was not necessary if "a magistrate finds at a preliminary hearing that there is probable cause to believe that the person in fact committed a felony." *Id.* at 16. Both the ballot title and the official explanation of the measure equated the word "crime" in the text of the proposed amendment with the word "felony." The term felony ordinarily refers to specific offenses, such as second-degree kidnapping, not enhanced punishment authorized for those offenses.

Considering the text, context, and legislative history of Article VII (Amended), section 5, we conclude that section 5 requires the grand jury to find and plead only the elements of the crime as defined by the legislature. Article

VII (Amended), section 5, does not contemplate, as a matter of state constitutional law, a "crime" that differs from the conventional crime that the legislature has defined. To be sure, this court's earlier cases state that, when the legislature has not provided some other means by which defendants may be notified of sentence enhancement facts, we may infer that the legislature intended that the grand jury would find and the indictment would plead those facts. That inference does not operate as a matter of constitutional law; rather, it reflects an understanding of the legislature's intent. And it does not help defendant in this case. As noted, the legislature has provided that a prosecutor need not plead sentence enhancement facts in the indictment. ORS 136.765. Timely written notice will suffice. *Id.* Defendant's constitutional challenge under Article VII (Amended), section 5, fails.

## II. ARTICLE I, SECTION 11

Defendant also argues that the grand jury's failure to find and plead the facts necessary to impose a dangerous offender sentence violates Article I, section 11. Defendant relies on two clauses in Article I, section 11, to support that argument. *See* Or Const, Art I, § 11. One of those clauses, the Notice Clause, provides a person accused of a crime the right "to demand the nature and cause of the accusation against him." *Id.* Another clause, the Jury Trial Clause, guarantees the accused "the right to public trial by an impartial jury" in all criminal prosecutions. *Id.* Those two clauses concern distinct rights, and we address defendant's arguments under each clause separately.

### A.  *The Notice Clause in Article I, section 11*

At common law, an indictment served to put a defendant on notice of the charges against him or her. *See* Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, 5 *Criminal Procedure* § 19.1(a) (3d ed 2007). Initially, common-law pleading requirements were fairly straightforward. *Id.* (discussing fourteenth-century pleading requirements). Later, they became technical and arcane. *Id.* § 19.1(b). Indeed, one author described a common-law indictment as a "'lengthy and tortuous document'" "'replete with archaic terminology and ritualistic formulae * * * [which] served more

to mystify than inform the defendant.'" *Id.* § 19.1(a) (quoting Note, 53 Harv L rev 122, 122 (1939)). As a result, some courts in the mid-nineteenth century began to relax the common-law pleading rules. *Id.* § 19.1(b). However, constitutional clauses, such as the Notice Clause in Article I, section 11, which gives a defendant the right "to demand the nature and cause of the accusation against him," limit the extent to which courts and the legislature can simplify what an indictment must contain. *See State v. Smith*, 182 Or 497, 501-02, 188 P2d 998 (1948).

This court explained in *Smith* that the Notice Clause in Article I, section 11, permits the simplification of common-law pleading rules but does not "authorize the omission from an indictment of allegations necessary to describe a specific crime." *Id.* at 501 (citing *Commonwealth v. Freelove*, 150 Mass 66, 22 NE 435 (1889)). In *Smith*, the question was whether the indictment was sufficiently particular, and this court held that the defendant's statutory opportunity to demur to the indictment and "question [its] sufficiency * * * as to definiteness and certainty meets * * * the requirements of the bill of rights in this respect"; that is, the procedural opportunity to demur to the indictment was sufficient to satisfy the constitutional right of an accused to demand notice of the nature and cause of the accusations against him or her. *Id.* at 507.

The court in *Smith* did not have occasion to address the issue defendant raises here—whether sentence enhancement facts are "allegations necessary to describe a specific crime" within the meaning of the Notice Clause in Article I, section 11. *See Smith*, 182 Or at 501 (using that phrase to describe what the constitution requires an indictment to contain). Defendant relies on two passages from Bishop's 1895 treatise on criminal procedure to show that they are. One passage on which defendant relies addressed common-law pleading requirements. The other passage referred to clauses similar to the one in Article I, section 11, that give an accused the right to be informed of the nature and cause of the accusation.[10]

---

[10] Although defendant states that the constitutional passage he quotes is from Bishop's 1858 treatise on substantive criminal law, the passage is not found in that

Defendant's argument based on Bishop's treatise rests on three premises, each of which is essential to his conclusion. The first premise is that the passages from Bishop on which defendant relies refer to sentence enhancement facts rather than facts that distinguish one degree of a crime from another. The second premise is that the Notice Clause in Article I, section 11, incorporates the common-law pleading requirements described in Bishop's treatise. The third premise is that the Notice Clause, as defendant interprets it, survived the 1974 amendment to Article VII (Amended), section 5. We consider those issues in turn.

Defendant relies on statements from Bishop's treatise on criminal procedure that the common law required that an indictment contain "every fact which is legally essential to the punishment to be inflicted." *See* Joel Prentiss Bishop, 1 *Commentaries on the Law of Criminal Procedure* §§ 77, 81, 84, 88 (1872).[11] For example, Bishop wrote:

> "[T]he common law requires each and every individual thing which itself or a statute has made an element in the wrong *upon which the punishment is based*, to be alleged in the indictment. The court, in adjudging the punishment,—or the jury, in assessing it, as is done in some of our States,—can take into its consideration nothing except what is specifically charged in the indictment."

*Id.* § 84 (summarizing two cases previously discussed) (emphasis added). To prove that proposition, Bishop discussed two cases in which the English courts had held that an indictment must specify the facts on which the crime and the increased punishment depend. *See Criminal Procedure* §§ 82-83. The two cases that Bishop discussed suggest that his statement may not mean as much as defendant perceives.

In one case, a statute divided the crime of burglary into two degrees. *Id.* § 83. The higher degree of the crime,

---

treatise but comes instead from Bishop's 1895 treatise on criminal procedure. *See* Joel Prentiss Bishop, 1 *New Criminal Procedure* § 88 (1895).

[11] The 1872 and 1895 versions of Bishop's treatise differ in minor respects. To the extent that either version of those treatises provides an insight into the framers' intent, the 1872 treatise is closer in time and thus more relevant. Accordingly, we refer to the 1872 version of Bishop's treatise in considering defendant's argument. As noted below, an 1866 version of Bishop's treatise exists that differs from the 1872 version; it is closer in time and provides even less support for defendant's argument.

which Bishop characterized as the "first degree of burglary," required proof of breaking and entering a dwelling house and, while inside, striking an inhabitant. *Id.* Bishop explained that the indictment in the case was deficient because it alleged that the defendant had broken and entered into a house and had struck "D. James" when, in fact, the person whom the defendant had struck was named Jones, not James. *Id.*

Two propositions follow from Bishop's description of that case. First, it appears that the offense that the indictment charged (first-degree burglary) was a separate offense from the lesser degree of the crime. The lower degree of the crime consisted of breaking and entering, and the higher degree consisted of breaking, entering, and striking an inhabitant. To say that an indictment must allege all the elements of a separate offense that carries a greater punishment is unexceptional and does not suggest, as defendant concludes, an intent to require that sentence enhancement facts be pleaded in addition to the elements of the offense. Second, the deficiency in the indictment that Bishop identified was not the failure to allege an element of the offense, much less the failure to allege a sentence enhancement fact; rather, the deficiency was a variance between the facts alleged and proved. Although the statement from Bishop appears, at first blush, to support defendant's position, one of the cases on which that statement is based suggests that it may mean less than first appears.

The other case that Bishop discusses is to the same effect. *See id.* § 82 (discussing *King v. Monteth*, 168 Eng Rep 452).[12] The defendant in *Monteth*'s case was charged with the crime of assault with intent to rob. *Monteth*, 168 Eng Rep at 452. That crime, as described in the decision, was a separate offense that carried with it a greater punishment than assault. *Id.* at 452-53. The problem with the indictment, according to the decision, was that it omitted an allegation that Monteth had acted with force and violence. As a result, the indictment alleged an assault with an intent to steal rather than an assault with an intent to rob. *Id.* Because

---

[12] Bishop takes the description of *Monteth*'s case from an English treatise, *Russell on Crimes*. *See Criminal Procedure* § 82.

the crime with which Monteth was charged, as the decision described it, was a separate offense that carried a greater punishment, the principle that Bishop drew from it again appears unremarkable: If a separate offense carries a greater punishment, the indictment must allege all the elements of that offense.

Having discussed common-law requirements, Bishop stated that the federal constitution followed the common law. *Criminal Procedure* § 88. He then mentioned various federal constitutional clauses, many of which do not appear to have anything to do with what the grand jury must find or the indictment must plead. *See id.* Among the clauses he cited, however, was the clause in the Sixth Amendment that provides that "in all criminal prosecutions, the accused shall enjoy the right *** to be informed of the nature and cause of the accusation." *Id.* Bishop concluded that that clause and similar state constitutional clauses are:

> "full and complete guarantees, to all persons held for crimes of whatever sort, that, before they shall be convicted, there shall be an allegation made against them of every element of crime which the law makes essential to the punishment to be inflicted."

*Id.* Read in the context of Bishop's preceding discussion of the common law, that statement provides less support for defendant than first appears. To the extent that Bishop is speaking only about separate offenses in describing both the common law and the constitutional guarantees, the statement is unexceptional.[13]

This is not to say that the common law is completely at odds with defendant's position. In his concurring opinion in *Apprendi*, Justice Thomas explained that, beginning in the mid-nineteenth century, some courts recognized that a

---

[13] To the extent that defendant argues that Bishop's statements, taken at face value, reflect the understanding of the persons who adopted the Oregon Constitution, we reach a different conclusion. Bishop published the 1872 edition of his treatise 15 years after Oregon's constitution was drafted and adopted. The first edition of Bishop's treatise on criminal procedure was published in 1866 and omits almost all the statements on which defendant relies in support of his argument. *See* Joel Prentiss Bishop, *Commentaries on the Law of Criminal Procedure*, §§ 293-95 (1866). Those sections address the need to plead allegations related to punishment and are consistent with the conclusion we reach.

fact that increased punishment either was an element of the offense or "create[d] two grades of crime." *See* 530 US at 502-09 (Thomas, J., concurring).[14] Justice Thomas's opinion relied primarily on cases from Massachusetts and Wisconsin that interpreted statutes providing increased punishment for different criminal acts. One case, for example, held that an indictment for larceny must allege the value of the object stolen both because that was "well settled practice" and because the Massachusetts statutes "prescribe[d] the punishment for larceny, with reference to the value of the property stolen." *Hope v. Commonwealth*, 50 Mass 136, 137 (1845).

The court did not explain in *Hope* whether the value of the property was an element of an offense that distinguished different degrees of larceny or whether the differing values of the property stolen were sentence enhancement facts that increased the punishment for a single offense of larceny.[15] Two years later, however, the Massachusetts Supreme Judicial Court described a similar set of statutes as one that "creat[es] two grades of crime." *See Larned v. Commonwealth*, 53 Mass 240, 242 (1847) (describing burglary statutes). Justice Thomas found both cases informative. As we understand the Massachusetts cases, the court inferred from the terms of the statute that the legislature had intended to create two separate offenses, the greater of which authorized the imposition of increased punishment.

The primary case from Wisconsin that Justice Thomas cited is to the same effect. *See Lacy v. State*, 15 Wis 15 (1862). In that case, a statute made it a crime to willfully and maliciously burn a dwelling house at night and provided three degrees of punishment if: (1) no one was lawfully inside when the house was burned, (2) a person was lawfully inside but no one died as a result of the fire, and (3) a person died as a result of the fire. *See Apprendi*, 530 US at 504

---

[14] Defendant does not rely on either Justice Thomas's concurring opinion or the cases cited in it. However, the concurrence undertook an extensive review of mid-nineteenth century cases, and we would be remiss if we did not examine both the cases Justice Thomas cited and the conclusions he drew from them.

[15] Justice Thomas's concurring opinion sets out the larceny statute in a footnote. *See Apprendi*, 530 US at 503 n 3. The statute is ambiguous as to whether the legislature intended to create three separate offenses or a single offense with increased punishment based on the differing value of the property taken.

n 4 (quoting the Wisconsin statute). In *Lacy*, the indictment alleged that the defendant had willfully and maliciously burned the barn and "dwelling house of Manoah Griffin, *** one Manoah Griffin *** being then in said dwelling house," but that the burning had not resulted in Manoah Griffin's death. *Id.* at 16.

The Wisconsin Supreme Court explained that the statute "create[d] three distinct statutory offenses," and it recognized that the state had intended to charge the defendant with the mid-level offense—burning a dwelling house while a person was lawfully inside without causing the loss of that person's life. *Id.* at 16. The court concluded, however, that the indictment was deficient because it did not allege that Manoah Griffin was "lawfully" inside Manoah Griffin's dwelling house. *Id.* at 16-17. The court reasoned, "[i]t is certainly not impossible that there might be one Manoah Griffin who owned the dwelling house, and another by the same name unlawfully in it when it was consumed" by fire. *Id.* at 17.[16] Because the indictment had failed to allege a fact necessary to sentence the defendant for the mid-level offense, the court reversed his conviction and remanded to permit the trial court to sentence the defendant for the lesser-included offense of burning a dwelling house with no one lawfully inside. *Id.* at 19-20.

Relying primarily on those Massachusetts and Wisconsin cases, Justice Thomas concluded that, as a matter of federal constitutional law, facts that lead to increased punishment are elements of the offense that must be pleaded in the indictment and proved to the jury.[17] In our view, those cases turn on what the legislature intended; that is, the courts in those cases inferred that the legislature intended

---

[16] The court held out the possibility that the result might have been different if the indictment had referred to "said Manoah Griffin" instead of "one Manoah Griffin." In that case, it might be possible to infer that the Manoah Griffin who was inside the dwelling house was the Manoah Griffin who owned it. *See Lacy*, 15 Wis at 17.

[17] Some scholars have questioned whether the nineteenth century cases were as uniform as Justice Thomas's concurring opinion suggested. *See* Stephanos Bibas, *Judicial Fact-Finding and Sentence Enhancements in a World of Guilty Pleas*, 110 Yale L J 1097, 1129 (2001) (relying on statements from a case from another jurisdiction to conclude that "there was no uniform rule of charging and proving all sentence enhancements at common law").

to create different degrees of a crime based on the harm inflicted. There is a difference between inferring that the legislature intended to create separate offenses or degrees of a crime and inferring that it intended to create a single offense with increasing degrees of punishment based on the presence of differing sentence enhancement factors. Few people would dispute that an indictment must allege all the elements of a separate offense. And, if as those cases suggest, that is all that the Massachusetts and Wisconsin decisions stand for, then those cases shed little light on whether, as a matter of constitutional law, the framers of Oregon's constitution would have understood that the right to demand the nature and cause of the accusation against a person requires an indictment to plead facts that, as a matter of legislative intent, are merely sentence enhancement factors.

Beyond that, as discussed above, the common law assumed that sentence enhancement facts had to be pleaded in the indictment unless the legislature provided otherwise. *See Waterhouse*, 209 Or at 429-31 (describing the common-law practice); *Ross's Case*, 19 Mass 165, 171 (1824) (same). If, however, the legislature provided another means of notifying a defendant of sentence enhancement facts, then those facts did not have to be pleaded in the indictment. *Id.* In our view, even if we assumed that the Notice Clause in Article I, section 11, incorporated common-law pleading requirements, it is difficult to identify a consistent or coherent common-law practice that would require indictments to plead sentence enhancement facts that, as a matter of legislative intent, are not elements of the crime. The initial premise on which defendant's Notice Clause argument rests is, at best, suspect.

The second premise on which defendant's argument rests is also problematic. As noted, his argument rests on the premise that the persons who wrote and adopted the Notice Clause in Article I, section 11, intended that indictments in criminal cases would conform to common-law pleading practice. Defendant selects one aspect of what he perceives to be common-law pleading practice—that an indictment must plead sentence enhancement facts. He overlooks, however, other aspects of that practice, such as the sort of technical and arcane pleading requirements on which the decisions

in *Lacy* and *Monteth* turned. Defendant never explains why the voters would have intended to incorporate the former aspect of common-law practice without also incorporating the latter. *Cf. State v. Smith*, 301 Or 681, 697, 725 P2d 894 (1986) (plurality) (explaining that "the tail goes with the hide").

This court has rejected the proposition that the Notice Clause in Article I, section 11, requires that indictments include the sort of technical and arcane factual detail that nineteenth-century common-law pleading practice did. *See, e.g., Smith*, 182 Or at 509. If the people did not intend to require that indictments conform to that aspect of nineteenth-century pleading practice, it is difficult to see why they would have intended that the Notice Clause would incorporate what is, in our view, a far more uncertain common-law proposition—that an indictment must go beyond pleading the elements of the crime and also plead sentence enhancement facts.

Defendant's argument faces a final hurdle. Even if there were some suggestion that the common law required indictments to plead sentence enhancement facts and that, in adopting the Notice Clause in 1857, the voters intended to give constitutional effect to that common-law practice, the current version of Article VII (Amended), section 5, looks in a different direction. As explained above, Article VII (Amended), section 5, requires the grand jury to determine whether probable cause exists for the elements of the legislatively defined crime. It does not require the grand jury to determine whether there is probable cause for sentence enhancement facts that would support, for example, a dangerous offender sentence.

It is difficult to reconcile the two constitutional provisions, at least as defendant interprets the Notice Clause in Article I, section 11. If defendant's reading of the Notice Clause were correct, it would require an indictment to plead facts that Article VII (Amended), section 5, does not require the grand jury to find. The two provisions, as defendant interprets them, conflict. In that event, the later-enacted provision controls. *See In re Fadeley*, 310 Or 548, 560, 802 P2d 31 (1990) (explaining that, to the extent that Article VII (Amended), section 8, conflicted with Article I, section 8, the

later-enacted provision controlled); *see also Coalition for Equit. School Fund. v. State of Oregon*, 311 Or 300, 309, 811 P2d 116 (1991) (same). As this court reasoned in *Fadeley*, "[w]hen the people, in the face of a pre-existing [constitutional] right, * * * adopt a constitutional amendment that by its fair import modifies the pre-existing right, the later amendment must be given its due." 310 Or at 560. We hold that the Notice Clause of Article I, section 11, does not require that an indictment allege sentence enhancement facts.

## B.   *The Jury Trial Clause of Article I, section 11*

Defendant invokes one other clause in Article I, section 11, the clause that guarantees an accused the "right to public trial by an impartial jury" in all criminal prosecutions. Defendant argues that, as we have interpreted the Jury Trial Clause, he had a right to have the jury find one of the three sentence enhancement facts necessary to impose a dangerous offender sentence—whether he was "being sentenced for a felony that seriously endangered the life or safety of another." *See* ORS 161.725(1)(b). The state does not dispute that the Jury Trial Clause of Article I, section 11, required the jury to find that fact, and we assume that it did. The question that remains is whether the Jury Trial Clause also governs what the grand jury must find and the indictment must plead.

In interpreting an original constitutional provision, we consider the text of the provision, its history, and our cases interpreting it. *See Priest*, 314 Or at 415-16 (looking to those sources). Textually, the clause of Article I, section 11, on which defendant relies guarantees the right to a jury trial in all criminal prosecutions. Or Const, Art I, § 11. It does not address the facts that the grand jury must find in order to return an indictment. The two bodies are distinct, and it is textually difficult to convert a constitutional right to a trial by jury into a requirement that governs what the grand jury must find to issue an indictment.

The second problem is related to the first. The context is at odds with defendant's reliance on the Jury Trial Clause of Article I, section 11. As explained above, a separate provision of the constitution, Article VII (Amended), section 5,

governs the facts that the grand jury must find to return an indictment for a felony. As also explained above, that provision does not require that grand juries find sentence enhancement facts to indict a defendant for a crime. We would have to ignore Article VII (Amended), section 5, and indeed read it out of the constitution, to interpret the Jury Trial Clause of Article I, section 11, as defendant urges us to do. To the extent that the two constitutional provisions conflict, Article VII (Amended), section 5, controls. *See Fadeley*, 310 Or at 560.

There is another contextual problem with defendant's argument. This court explained in [*State v. Ice*](), 343 Or 248, 257, 170 P3d 1049 (2007), *rev'd on other grounds*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009), that the existence of the jury trial right under Article I, section 11, does not "tur[n] on whether the [sentencing] factor extends the length of a defendant's sentence beyond the statutory maximum," which is one criterion for identifying sentence enhancement facts. Put differently, the class of facts that the Jury Trial Clause of Article I, section 11, requires juries to find is not coextensive with the class of sentence enhancement facts. The former class is both broader and narrower than the latter class.[18] In our view, the lack of identity between the facts that the Jury Trial Clause requires the jury to find and sentence enhancement facts, makes the Jury Trial Clause of the Oregon Constitution an unlikely source for the constitutional requirement that defendant asks us to announce.

Finally, our cases consistently have held that, even though the Jury Trial Clause of Article I, section 11, requires the jury to find some facts related to sentencing, those sentencing facts are not elements of the offense that the grand jury must find and that the indictment must plead. *See, e.g.*, *Johnson*, 340 Or at 352; *Oatney*, 335 Or at 292-97; *Wagner*, 304 Or at 171-72. We consistently have held that, as

---

[18] As the court explained in *Ice*, the Jury Trial Clause requires juries to find some facts necessary to impose mandatory minimum sentences, even though those facts do not result in a greater sentence than the statutory maximum. *See* 343 Or at 257. Conversely, the Jury Trial Clause does not require juries to find facts that result in a greater sentence than the statutory maximum when, to use a shorthand formulation, those facts relate to the offender rather than the offense. *See id.* at 257-61 (describing which "offense-specific" facts the Jury Trial Clause requires a jury to find).

a matter of state constitutional law, the grand jury's task is more limited. *Johnson*, 340 Or at 352. It only needs to find the elements of the "conventional charge" as the legislature has defined it. *Id.*; *Hicks*, 213 Or at 641. It need not find any sentence enhancement facts. In that regard, we note that none of the common-law history that defendant has cited (to the extent it provides any support for him) supports the proposition that the grand jury must find only a subset of sentence enhancement facts. Defendant thus provides no history to support his argument that the Jury Trial Clause of Article I, section 11, requires the grand jury to find the same limited set of facts that it requires juries to find. The text of the Jury Trial Clause, its history, and the cases inter-preting it provide no support for defendant's reliance on that clause. We conclude that neither Article VII (Amended), section 5, nor the two clauses in Article I, section 11, on which defendant relies required the grand jury to find and plead sentence enhancement facts.

The decision of the Court of Appeals and the judg-ment of the circuit court are affirmed.